## DEYO vs. STEWART.

At common law, where the cattle of one of two adjoining proprietors are found tres-
passing upon the land of the other, the owner of the cattle, to excuse himself,
must show not only that the fences which the other proprietor was bound to
maintain, were out of repair, but also that the cattle passed over such defective
fences; and the act of 1838, (*Stat. p.* 253,) has not changed the rule.

Accordingly, where the boundary fence between adjoining proprietors had been
divided and distinct portions assigned to each to erect and maintain, and in an
action brought by one of them for an injury by the cattle of the other, it appeared
that both portions of the fence were out of repair, and it was not shown over
what part the cattle passed to the plaintiff's land; *held*, that the plaintiff was
entitled to recover.

ERROR to the Saratoga common pleas. Deyo sued Stewart in a justice's court in trespass, for an injury committed on his land by the defendant's cattle; and on not guilty pleaded, with notice of special matter, the plaintiff obtained judgment, which was reversed by the common pleas on *certiorari*. It appeared from the return of the justice that the parties owned adjoining farms, and it was shown that the defendant's cattle had been seen in the plaintiff's field adjacent to the farm of the defendant. There was evidence tending to show that the parties had apportioned the division fence; the defendant being bound to build and keep in repair the portion south of a cherry tree standing on the line, and the plaintiff the part north of the tree. Both parts of the fence were somewhat out of repair; and there was no evidence to show whether the cattle escaped over the part of the fence which the plaintiff was bound to maintain, or over the other part. From the judgment of reversal the plaintiff brought error here.

*Beach & Bockes*, for the plaintiff in error. The common pleas acted on the assumption that the recent statute (*Stat.* 1838, *p.* 253,) admitted of a construction which would prohibit a party who had suffered injury from the cattle of his neighbor from recovering a compensation, if the plaintiff's portion of the fence was out of repair, though the cattle escaped from a

defect of a fence which belonged to the defendant to uphold. This would be a departure from a settled rule of the common law, without any apparent motive. It is a sufficient protection to the owner of cattle found trespassing, to enable him to set up that they escaped from the defendant's field by reason of a defective fence which the plaintiff was bound to maintain. The purpose of the act seems to have been simply to settle a question of damages, which had been left doubtful by a decision of the court for the correction of errors. (*Clark* v. *Bown,* 18 *Wend.* 213; *Stafford* v. *Ingersol,* 3 *Hill,* 38.)

*J. Ellsworth,* for the defendant in error. The portion of the fence which the plaintiff was bound to maintain being out of repair, he was prohibited by the express language of the statute of 1838, from recovering damages on account of trespass by cattle.

*By the Court,* BEARDSLEY, J. Upon the evidence the ustice might very well find that the plaintiff was bound to maintain the division fence *north* of the cherry tree, and the defendant that on the *south.* There was evidence also which went to show that both parts of the fence were somewhat out of repair, although the northerly part seems to have been in the worst condition of the two. There is no evidence to show with any thing like certainty, over which part of the fence the cattle passed ; the fact, indeed, is left altogether in doubt. If it was material to the defence interposed by the defendant that they should have passed over that part of the division fence which the plaintiff was bound to repair, the fact should have been established by evidence ; but it was not done, and we cannot, as the case is now situated, assume that the cattle came on to the land of the plaintiff in consequence of any defect in the division fence which he was bound to keep up and maintain.

Until the passage of the act of 1838, there could be no question that the defendant, in order to excuse the trespass of his cattle, was bound to show not only that the division fence which the plaintiff ought to maintain, was out of repair, but

also that the cattle passed on to his land over such defective or ruinous fence. (1 *Cowen,* 79, 91, *note ;* 2 *Saund.* 285, *note ;* 3 *Chit. Pl. 7th Am. ed.* 1103, 1196, *and notes.*) The plaintiff's neglect was of no moment unless the beasts came on to his land in consequence of the ruinous condition of that part of the fence which he was bound to keep in repair; and as this was an essential fact in the defendant's defence, it was for him to show it by evidence.

But it is argued that the act of 1838 has made a radical change in the law in this respect; so that one who is himself in default as to a partition fence which he was bound to repair, can have no redress for a trespass on his land, by the cattle of an adjoining proprietor, although they escaped and came uopn the land of the plaintiff over that part of the division fence which such adjoining owner was himself bound to repair. This would be a new as well as a remarkable provision; but the statute referred to admits of no such construction. The first part of the section is in these words : " If any person liable to contribute to the erection or reparation of a division fence, shall neglect or refuse to make and maintain his proportion of such fence, or shall permit the same to be out of repair, he shall not be allowed to have and maintain any action for damages incurred." (*Laws of* 1838, *p.* 253.) The word *incurred,* means " brought on ;" ( *Web. Dict. ;*) and by this statute the party in default is to have no action for damages brought on himself in some manner. What is that manner? Plainly the clause means such damages as are brought upon the party by his own neg ligence; and it cannot be extended to damages sustained in any other way whatever. So far the statute is in affirmance of what was previously a well settled rule of law, and was not intended to make any change in it. But the subsequent part of the section had another and a very different object in view, which was to declare what damages a party so in default should be liable *to pay ;* a point upon which the court of errors immediately preceding the time when this act was passed had been equally divided. (*Clark* v. *Brown,* 18 *Wend.* 213.) It was to settle the law upon this point, and not to make any al-

teration in other respects, that the statute was passed. (*Staf ford* v. *Ingersol,* 3 *Hill,* 38.) In prescribing the measure of damages *against* a party so in default, the legislature adverted to and affirmed a well settled rule of law in regard to a recovery of damages by such defaulting party; but they did not intend to change the law in this respect, as is plain from the use of the word *incurred.* On this point there had been no doubt about the rule of law and of justice too, and no one desired to change it. *But* on the other question there was great doubt and uncertainty, which the statute very properly removed. As this statute cannot aid the defendant, it was incumbent on him to show that the cattle escaped into the plaintiff's close through some defect in that part of the fence which the plaintiff was bound to maintain. But this was not shown, and therefore the plaintiff was entitled to recover. The common pleas erred, and their judgment should be reversed.

Judgment reversed.(*a*)

(*a*) Affirmed in the court of appeals, September, 1848.