# CHESHIRE,

## JULY TERM, A. D. 1858.

---

### LAWRENCE *v.* COMBS.

The owner of a close is not obliged to fence against any cattle but such as are rightfully upon the adjoining land.

This rule of law is not changed by section 12, chapter 136, of the Revised Statutes, which provides that "the party neglecting to build, or keep in repair any partition fence which he is bound to maintain, shall be liable for all damages arising from such neglect; and shall have no remedy for any damages happening to himself therefrom."

The plaintiff and defendant were owners of adjoining closes, and had divided the partition fence between them. Cattle, belonging to third persons, which were wrongfully in the highway, strayed upon the defendant's close, and thence across that part of the fence which he was bound to maintain, and which was out of repair, upon the plaintiff's land, and damaged his crops.—*Held*, that the plaintiff could not maintain an action against the defendant for the damages.

CASE, for negligence. The declaration alleged, in substance, that the plaintiff was seized and possessed of a tract of land, situate in Winchester, containing thirty acres, bounded on the north by the highway leading from Winchester to Swanzey, on the west side of the Ashuelot river; on the east by land of the defendant; on the south by Ashuelot River; and on the west by land of David Combs and said highway; and that the defendant was possessed of and in the occupation of a certain other tract of land, in Winchester, situate next adjoining the

land of the plaintiff, and easterly thereof; and the defendant was bound and liable to maintain and keep in repair the northerly portion: to wit, thirty-eight rods of the division fence between said tracts of land, commencing at said highway on the north, and running southerly, the same being part of the division fence between the plaintiff and the defendant, which the defendant was bound to maintain and keep in repair. Yet that the defendant wrongfully suffered and permitted the said portion of division fence to be, and the same was out of repair, fallen down and ruinous, and the defendant neglected to build and keep the same in repair, as by law he was bound to do; by reason of all which the plaintiff's premises were left open and exposed, and divers cattle and sheep escaped into the plaintiff's premises, and ate up, trod down and destroyed his rye, then and there growing, and trod down and injured his grass.

The action was referred to a referee, who reported that the plaintiff should recover of the defendant the sum of fifteen dollars damages, and costs of reference, taxed at twelve dollars thirty-four cents, and costs of court, to be taxed by the court. He then adds:

"The referee reports to the court that it was proved on the trial of the cause that the cattle which damaged the plaintiff's crops belonged to third persons, and were suffered to stray in the highway, and that the defendant had no care or charge over them; that they passed from the highway upon the defendant's land, and thence over the defendant's portion of the division fence, which was out of repair and a part of it taken away, into the plaintiff's close, where they damaged his crops. If the court are of the opinion that the facts above reported and proved are a sufficient answer in law to the plaintiff's action, I do then, instead of awarding the aforesaid damages and costs to the plaintiff, award that the said Anthony Combs recover against the said Luther Lawrence his costs of reference,

taxed at eight dollars and sixty-six cents, and his costs of court, to be taxed by the court."

*Wheeler & Faulkner*, for the plaintiff.

The award of the referee, in favor of the plaintiff, must stand, unless it clearly appears from his report that such result would contravene some principle of law.

The legislature having undertaken to define and prescribe the duties and liabilities of adjoining land-owners in relation to maintaining their respective portions of partition fence, recourse must be had to their enactments, in order to determine what those rights and liabilities are.

Section 1, chapter 142, of the Compiled Laws, imposes upon owners of adjoining lands the duty of maintaining partition fence.

Section 2 makes provision for the division of such fence.

Section 12 provides that the party neglecting to keep in repair his portion of partition fence shall be liable for *all damages* ensuing from such neglect.

Were the damages, found to have been sustained by the plaintiff in this case, damages arising from the neglect of the defendant to keep his portion of the fence in repair?

The report leaves us room for doubt on this point. The cattle passed through the defendant's insufficient fence into the plaintiff's land. But the defendant maintains that so far as these cattle were concerned, he was under no obligation to maintain the fence. They were trespassers upon his land, and he is bound to protect his neighbor only against such cattle as may be rightfully upon his land.

Our answer to this is:

1. That the statute makes no such exception. The language used is no where ambiguous, and no sound rule of interpretation would seem to warrant the court in drawing such inference.

2. It is not to be presumed that the legislature intended to reënact a principle of the common law, then well settled

and understood in this State, but to provide a remedy for a *new* case.

3. An examination of section 11, same chapter, confirms our view of the law.

4. To show that the damages here claimed are not too remotely the consequence of the neglect of the defendant, we cite 10 East 4, 7 and 36. See, also, *Mills* v. *Stark*, 4 N. H. 512; *Rust* v. *Low*, 6 Mass. 90.

5. The true construction of the law, in our view, is this:

When owners of adjoining lands have divided the partition fence between them, they are responsible, each to his neighbor, for all damages, whether by his own or others' cattle, happening through the insufficiency of his portion of such fence—whether through neglect to build, or the destruction of such fence by natural causes, or actual removal—*so long as they improve their respective lands.*

The defendant, in this case, has been guilty of a neglect or breach of duty. Through that neglect the plaintiff has sustained an injury. The statute provides that for all such damage the wrong-doer shall be liable.

*Lane,* for the defendant.

This action was brought to recover damages which the plaintiff alleges he suffered in consequence of the defendant's failing to maintain his portion of the division fence, according to law.

The report of the referee finds that the damage was done by cattle over which the defendant had no control, and that they were trespassers on the defendant as well as on the plaintiff. For this the defendant is not responsible. *Avery* v. *Maxwell*, 4 N. H. 36; *Towns* v. *Cheshire R. R. Co.*, 21 N. H. (1 Foster) 365; *Cornwall* v. *Sullivan R. R. Co.*, 28 N. H. (8 Foster) 161, and cases cited.

EASTMAN, J. At common law, a tenant or owner was not obliged to fence against an adjoining owner or occupier,

except by prescription, but he was to keep his cattle on his own land at his peril. And if they escaped, they might be taken on whatever land they were found damage· feasant, or the owner was liable to an action of trespass by the party injured. And where there was no prescription, but the tenant had made an agreement to fence, he could not be compelled to carry out his agreement and make the fence ; and the party injured by the breach of the agreement had no remedy but by an action on the agreement. *Norvel* v. *Smith,* Croke Eliz. 709 ; *Rust* v. *Low,* 6 Mass. 94 ; *Avery* v. *Maxwell,* 4 N. H. 36 ; *Deyo* v. *Stewart,* 4 Denio 101 ; 3 Kent's Com. 438 ; *Dean* v. *Sullivan Railroad,* 22 N. H. (2 Foster) 317 ; *Glidden* v. *Towle,* 31 N. H. (11 Foster) 168.

In case of a prescription to fence, the tenant could be compelled to fence by the writ of *curia claudenda,* sued out by the tenant of the adjoining close, who could also recover damages by that writ. Fitz Herbert's Natura Brevium, Cu. Claudenda 297 ; *Rust* v. *Low,* 6 Mass 94 ; *Glidden* v. *Towle,* 31 N. H. (11 Foster) 168.

But, by statute, the owners of adjoining lands, under improvement, are required to make and repair the partition fences between them. Rev. Stat., chap. 136, sec. 1. And after the fence has been divided, the owner of a close can sustain no action for damages done by horses or cattle breaking into his close, through defect in the fence which he was bound to make and repair, if they were rightfully on the adjoining land. *Avery* v. *Maxwell,* 4 N. H. 36 ; *York* v. *Davis,* 11 N. H. 241 ; *Page* v. *Olcott,* 13 N. H. 399.

Where there are adjoining closes, with an undivided partition fence, which each owner is bound to keep in repair, each is required to keep his cattle on his own land at his peril. *Tewksbury* v. *Bucklin,* 7 N. H. 518 ; *Avery* v. *Maxwell,* 4 N. H. 36 ; *Thayer* v. *Arnold,* 4 Met. 589 ; *Little* v. *Lathrop,* 5 Greenl. 356.

At common law, the tenant of a close who was obliged

by prescription to fence, was not required to do it against any cattle except those which were rightfully in the adjoining close. *Salkwell* v. *Milwarde*, 26 Hen. 6, 23; 10 Ed. 4, 7; Fitzh. *Curia Claud.* 1, 2; *Rust* v. *Low*, 6 Mass. 99, 100; 3 Kent 438.

And the same rule has been held to prevail where statutes have been adopted regulating the rights and duties of adjoining owners, in regard to fences. In *Rust* v. *Low*, already cited, which is a leading American case upon the question, the point was distinctly decided that the tenant of a close is not obliged to fence except against cattle which are rightfully upon the adjoining land. In *Avery* v. *Maxwell*, 4 N. H. 37, Chief Justice *Richardson* says that " it is well settled that the owner of a close is only bound to fence against creatures which are rightfully on the adjoining land." And in *Holliday* v. *Marsh*, 3 Wendell 147, Chief Justice *Savage* also says, that " it is certainly well settled that a man is not obliged to fence against any cattle but such as may be rightfully upon the adjoining close."

This doctrine is sustained by many authorities, among which may be cited *Wells* v. *Horvell*, 19 Johns. 385; *Stackpole* v. *Halcy*, 16 Mass. 38; *Lord* v. *Wormwood*, 29 Maine 282; *Hurd* v. *The Railroad*, 25 Vt. 122; *Dovaston* v. *Payne*, 2 H. Blackstone 527; *Cornwall* v. *Sullivan Railroad*, 28 N. H. (8 Foster) 167.

From the declaration of the plaintiff it appears that he and the defendant were owners of adjoining closes; that the fence between them had been divided, and that the defendant's portion of the fence was out of repair. Upon this state of facts, and according to the principles stated, there can be no doubt that the defendant would be liable, had the cattle that committed the trespass upon the plaintiff's land been rightfully in the close of the defendant, for they went into the plaintiff's close over that part of the fence which the defendant was bound to maintain.

But the cattle that committed the trespass were not the

Lawrence *v.* Combs.

property of the defendant, nor were they upon his land by his permission; but they belonged to third persons, and strayed from the highway—where they do not appear to have been for any legitimate purpose—into the defendant's close, and thence came upon the plaintiff's land, and did the damage. Both the plaintiff and defendant could maintain their actions against the owners of the cattle for the trespasses committed; for, not being rightfully in the highway, it is immaterial what the situation of their fences was. They were not obliged to fence against wrong-doers. The authorities cited settle this position.

The cattle, then, being wrongfully upon the defendant's land, whence they strayed upon the plaintiff's, there is no principle of law upon which the plaintiff can recover, unless we hold that the defendant is liable by virtue of the twelfth section of chapter 136 of the Revised Statutes. That section is as follows: "The party neglecting to build or keep in repair any partition fence which he is bound to maintain, shall be liable for all damages arising from such neglect; and shall have no remedy for any damages happening to himself therefrom." The preceding sections of the chapter point out the manner in which the fences between the owners of adjoining lands under improvement shall be divided, and then follows the section quoted.

At common law, as we have seen, adjoining owners could not be compelled to fence; but each party was obliged to keep his cattle on his own land, and the object of the statute was to enable such owners to divide the partition fences, and to insure them to be maintained, so that their cattle might graze upon adjoining lands without restraint. All the provisions of the statute point to this one end. They relate to matters exclusively between the adjoining owners, and are obligatory upon no others. They impose no duties in which the public have any interest, or of which the public have any means to enforce the

discharge. And we think that the intent of the twelfth section was to confine the liability for the neglect, to the damages done by the adjoining owners, or those in the rightful occupation of the lands; and not to make them consequentially liable for all the illegal trespasses that may be committed by others.

The plaintiff could probably have taken these cattle damage feasant, and if so, could have obtained satisfaction for the injury in that way; or he could have brought an action of trespass against the owners, and recovered the damages sustained, and thus compelled the party directly committing the wrong to answer for the same. But to hold the defendant liable would be to pass over the immediate and direct cause of the injury, and thus depart from the general rule of law which gives damages as a compensation, recompense, or satisfaction, to a plaintiff for an injury actually received by him from the defendant, and not from others. 2 Greenl. Ev., sec. 253; Co. Litt. 257, a; 2 Bl. Com. 438; *Rockwood* v. *Allen*, 7 Mass. 256.

And we are confirmed in giving this construction to the statute, by considering the last clause of the section. Not only is the party made liable, by the section, for damages arising from his neglect to maintain his part of the fence, but he is to " have no remedy for any damages happening to himself therefrom." Now, if the first clause of the section was intended to create a liability upon the neglecting party for all the trespasses of wrong-doers, then, by the same course of reasoning, he could recover nothing for any trespasses committed upon him by cattle that should escape from the adjoining close upon his land, however wrongfully they might be in such close; for he is to have no remedy for any damages happening to him from the neglect to maintain his part of the fence. And such a construction would be to override the authorities cited, as establishing the well settled principle that a per-

Lawrence *v.* Combs.

son is not obliged to fence against cattle wrongfully upon the adjoining close, but may maintain an action for any trespasses thus committed. The legislature could hardly have intended to have imposed such a penalty; and yet we do not see why, if the construction contended for is to be applied to the first clause of the section, it does not necessarily follow that it is applicable to the last.

Our conclusion is, that there should be

*Judgment on the report for the defendant.*